# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERKLEY REGIONAL INSURANCE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.  13-2617 |
| | : | |
| ERNEST BOCK & SONS, INC. | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                 June 26, 2014

Currently pending before the Court is the Motion to Dismiss/Motion to Stay by

Defendant and Third Party Plaintiff Ernest Bock & Sons, Inc.  For the following reasons, the

Motion to Dismiss is granted.

## I.    FACTUAL BACKGROUND

### A.    Facts Underlying the Amended Complaint

According to the facts set forth in the Amended Complaint,[1] Plaintiff Ernest Bock &

Sons, Inc. ("Bock") was the general contractor for the City of Philadelphia (the "City") on a

construction project for the substantial completion of the Philadelphia International Airport

Terminals D & E Expansion and Modernization — Baggage Handling System Project (the

"Project").  (Am. Compl. ¶ 6.)  On March 20, 2008, Bock and G&T Conveyor Company, Inc.

("G&T") executed a subcontract (the "Subcontract"), whereby Bock agreed to pay for and G&T

---

[1] For purposes of the Motion to Dismiss, the Court takes all of the factual allegations in the Amended Complaint as true.  Malia v. Gen. Elec. Co., 23 F.3d 828, 830 (3d Cir. 1994).

agreed to provide labor, supervision, material, and equipment for the substantial completion of the Project. (Id. ¶ 7.) Section Four of the Subcontract requires Bock to provide G&T at least seven days' written notice of any intention to terminate G&T's right to complete the Subcontract. (Id. ¶ 8.) Section Five of the Subcontract requires Bock to make "prompt payment" to G&T for work performed, properly invoiced, and paid for by the City. (Id. ¶ 9.)

In connection with G&T's work on the Project, Plaintiff Berkley Regional Insurance Company ("Berkley"), as surety, provided an American Institute of Architects' Form 312 Performance Bond, Bond No. 0125411, to Bock, as owner, with G&T as principal (the "Bond"). (Id. at ¶ 10.) The penal sum of the Bond is $11,930,897. (Id.) Berkley's obligations under the Bond arise after each specific precedent is satisfied. (Id. ¶ 12.) Paragraph three of the Bond states, in pertinent part, as follows:

> If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
>
> 3.1   The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;
>
> 3.2   The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and
>
> 3.3   The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

2

(Id. ¶ 12.)  "Owner Default" is defined as "Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof."  (Id. ¶ 13.)  If an Owner satisfies each condition precedent in Paragraph 3, the Bond provides that:

> When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:
>
> > 4.1   Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or
> >
> > 4.2    Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; . . .

(Id. ¶ 14.)

Shortly after work on the Project commenced, G&T notified Bock that Bock's electrical subcontractor, Chisom Electrical Contractor, Inc. ("Chisom"), was failing to proceed adequately with its work, which was causing delays and other problems adversely affecting the Project. (Id. ¶ 15.)  On November 26, 2008, G&T learned that Chisom was no longer working on the Project and promptly requested direction from Bock on how to proceed in the absence of an electrical contractor.  (Id. ¶¶ 16–17.)  Although G&T attempted to convene meetings with Bock to discuss solutions, Bock refused to meet.  (Id. ¶ 18.)  With the delays in work mounting, G&T made another request for a meeting on March 13, 2009, but Bock again ignored G&T's request. (Id. ¶ 19.)  Eventually, Bock hired another electrical subcontractor, Mulhern Electric Company ("Mulhern"), but the delayed hiring left the Project without an electrical subcontractor for approximately four months.  (Id. ¶ 20.)

By November 2009, the Project was significantly delayed and Bock owed G&T more

than $2.9 million for work performed on the Project.  (Id. ¶¶ 21–22.)  In addition, G&T had incurred additional impact costs and damages exceeding $6 million arising from construction delays, loss of productivity, increasing testing costs, change work directed without funding in place, costs to finance the work, increased storage costs, and interest.  (Id. ¶ 23.)  Nonetheless, G&T continued to attempt to work on the Project.  (Id. ¶ 24.)

By letter dated January 18, 2013, Bock notified Berkley and G&T that the City had terminated Bock's rights under its contract to complete the Project.  (Id. ¶ 25.)  Bock also notified Berkley that it "is considering declaring G&T to be in default of its contract and continues to make demand upon G&T's surety accordingly."  (Id. ¶ 26.)

On January 21, 2013, Bock filed a Petition for Special Injunction Against the City of Philadelphia ("Injunctive Petition") in the Philadelphia County Court of Common Pleas, arguing that the City's termination of its contract with Bock was wrongful and should be enjoined.  (Id. ¶ 27.)  The Petition was granted in part, suspending Bock's termination by the City.  (Id. ¶ 28.)  On January 28, 2013, however, Bock's termination was reinstated and rendered effective immediately.  (Id. ¶ 29.)  By letter of the same date, Bock (1) default terminated G&T's right to complete the Subcontract, citing its termination by the City as the reason; (2) made demand upon Berkley to perform under the Bond; and (3) requested Berkley to "contact [Bock] within fifteen (15) days of the date of this letter and advise how Berkley wishes to proceed."  (Id. ¶ 30.)  On January 29, 2013, Berkley attended a meeting with Bock, G&T, Bock's surety, and all respective parties' counsel.  (Id. ¶ 31.)  At the meeting, Berkley, under a full reservation of rights, agreed to cooperate fully as may be necessary to satisfy any and all obligations under the Bond.  (Id. ¶ 32.)

Following the January 29, 2013 meeting, Bock continued to make demands on Berkley to

"perform" under the Bond.  (Id. ¶ 33.)  By letter dated February 6, 2013, Bock agreed "to pay the balance of the contract price to Berkley in accordance with the terms of G&T's Purchase Order with [Bock] or to a contractor selected to perform the work described within G&T's Purchase Order with [Bock] in accordance with the Purchase Order."  (Id. ¶ 24.)  On February 11, 2013, Bock, arguing that it had satisfied the conditions precedent of Paragraph three of the Bond, demanded that Berkley elect one of the remedies under Paragraph four of the Bond.  (Id. ¶ 3.) The next day, Berkley acknowledged Bock's demand, but noted that Bock's contract with the City had been terminated, Bock was barred from the Project, Bock's surety on the Project—Liberty Mutual Insurance Company ("Liberty Mutual")—had elected to perform under its bond with the City, and Liberty Mutual opted to complete the Project with another contractor. (Id. ¶ 36.)  When Berkley requested the legal basis for Bock's demand on the surety to perform when it could not provide the surety with the necessary access to do so, Bock confirmed, by way of letter dated February 20, 2013, that the City had denied it permission to complete the Project. (Id. ¶¶ 37–38.)  Bock further acknowledged that Liberty Mutual elected to perform and complete the Project under its bond through another qualified contractor, but indicated that the City "did not object" to the participation of G&T in the Project's completion "solely for the purpose to obtain information that Liberty believes is necessary to evaluate whether to 'fix' or 'strip out' the system."  (Id. ¶ 39.)

On March 1, 2013, Berkley requested additional information from Bock and, reserving its rights, offered to perform under either Subparagraph 4.1 or 4.2 of the Bond.  (Id. ¶¶ 42–43.) Bock neither acknowledged nor accepted Berkley's offer of performance, but rather, on March 12, 2013, claimed that Berkley defaulted on the Bond and should immediately surrender the

5

penal sum of the Bond.  (Id. ¶¶ 44–45.)   Although Berkley did not believe it had defaulted on the

Bond—as Bock had committed an "Owner Default"—Berkley nonetheless communicated both

to Bock and its surety that, subject to a complete reservation of rights, Berkley would perform

under Subparagraph 4.2 and that G&T would be part of its completion team.  (Id. ¶¶ 46–47.)

Neither Bock nor its surety, Liberty Mutual, accepted Berkley's offer to perform.  (Id. ¶¶ 48.)

Berkley reiterated its offer by letter dated May 3, 2013, and, on May 17, 2013, Berkley, Bock,

and Liberty Mutual presented a Memorandum of Agreement to the City in which Berkley stated

that "subject to a full, complete and unequivocal reservation of all rights at law and equity, [it]

has agreed and agrees to perform the completion of the G&T Purchase Order No. 4598-1001

pursuant to Subparagraph 4.2 of the Berkley Bond[.]"  (Id. ¶ 52.)  The Memorandum identified

only Alliant Technologies ("Alliant") as an entity with which Berkley intended to subcontract a

portion of the completion work and did not designate G&T as a completion contractor.  (Id. ¶

51.)  The Memorandum did, however, confirm Berkley's rights under the Performance Bond to

"hire and pay for all personnel necessary, including, but not limited to, appropriate personnel

from G&T, Alliant Technologies ('Alliant') and/or any other subcontractors, consultants or third-

parties it deems necessary to complete the 'repair' of the BHS Project in accordance with

Berkley's obligations under the Berkley Bond to prepare the BHS Project for the resumption of

Phase I ISAT testing."  (Id.)

By letter dated May 28, 2013, the City rejected the Memorandum and stated that any

proposal "which includes G&T as a contractor or subcontractor of any tier" would not be

accepted.  (Id. ¶ 52.)  Bock accepted the City's rejection and demanded that Berkley still

complete the BHS Project.  (Id. ¶ 53.)  Berkley, however, emphasized that personnel from G&T

constituted a critical part of its completion team under Subparagraph 4.2 of the Bond.  (Id. ¶ 54.)

Bock nonetheless rejected Berkley's offer to perform under Subparagraph 4.2 by not allowing

Berkley to proceed with G&T's assistance at any level.  (Id. ¶ 56.)  As a result, Berkley claims

that it has no duty to perform under the Bond.

### B.     Procedural History

On November 18, 2009, G&T commenced an action in the Philadelphia Court of

Common Pleas ("PCCP Action") against Bock and its sureties, Liberty Mutual and Fidelity and

Deposit Company of Maryland ("F&D") (collectively the "Bock Defendants") by Praecipe to

Issue Writ of Summons.  G&T filed its Complaint in that action on March 25, 2010.  On March

28, 2013, G&T filed a Second Amended Complaint also in that action.  G&T alleges that it was

damaged by "construction delays, loss of productivity, increasing testing costs, change work

directed without funding in place, costs to finance the work, added storage costs . . . and

restricted site access . . . ."  (Def.'s Mot. to Dismiss, Ex. A.)  In response, the Bock Defendants

denied responsibility for these items and claimed that G&T materially breached the terms and

conditions of the G&T Purchase Order.  (Def.'s Mot. to Dismiss, Ex. B.)

On May 13, 2013, Berkley initiated the declaratory judgment action in this Court.  It then

filed an Amended Complaint on June 7, 2013, seeking a declaration that (a) Bock committed an

"Owner Default" under the terms of the Bond; (b) Bock breached the terms of the Bond by not

permitting Berkley to take action under Subparagraph 4.2 of the Bond; (c) Bock's "Owner

Default" constitutes a material breach of the Bond; (d) Bock's failure to accept Berkley's tender

of performance under 4.2 of the Bond also constitutes a material breach of the Bond; (e) as a

result of Bock's material breach of the terms of the Bond, Berkley is released from any and all

obligations to Bock under the Bond; and (f) Berkley's obligations to Bock under the Bond are excused and discharged.  (Am. Compl. at Wherefore Clause.)

Thereafter, on June 12, 2013, Bock filed a Second Amended Answer, Counterclaim, and Third-Party Complaint in the PCCP Action, and asserted a third-party claim against Berkley for breach of its bond obligations as G&T's surety.  (Pl.'s Mot. to Dismiss, Ex. X.)  Berkley then filed Preliminary Objections seeking to have the state court dismiss Bock's bond claim and to avoid litigating Bock's bond claim in the PCCP action.  The state court rejected Berkley's application to stay.  (Pl.'s Mot. to Dismiss, Ex. Y.)  Berkley thereafter filed a declaratory judgment claim in response to Bock's state court bond claim—a claim that is identical to the claim asserted by Berkley in the federal court action.  (Pl.'s Mot. to Dismiss, Ex. Z.)

On December 23, 2013, Bock filed the present Motion to Dismiss and/or Stay the present action.  Berkley responded on January 13, 2014, making the Motion ripe for judicial review.

## II.   DISCUSSION

In this current Motion, Bock seeks an order dismissing the pending Declaratory Judgment action in this Court in light of the existing PCCP action and the fact that the claims asserted in both actions are identical.  Specifically, it contends that the Court should exercise its discretion to decline jurisdiction over the pending action.  Upon consideration, this Court agrees.

The United States Supreme Court has made clear that, as a general rule, a federal court has "a virtually unflagging obligation" to exercise its jurisdiction and proceed with the case before it.  Colo. River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976).  It went on to explain that "'[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty

of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'" Id. (quoting Cnty. of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188–89 (1959)). Because of the court's "unflagging" obligation, "[t]he general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." Univ. of Md. at Balt. v. Peat Marwick Main & Co., 923 F.2d 265, 275–76 (3d Cir. 1991).

In very limited circumstances, however, a district court may abstain from exercising jurisdiction because of parallel state proceedings. Colorado River, 424 U.S. at 817–18.  Parallel cases involve the same parties and "substantially identical" claims, raising "nearly identical allegations and issues." Timoney v. Upper Merion Twp., 66 F. App'x 403, 405 (3d Cir. 2003) (quotations omitted).  If the actions are parallel, then the district court must consider several factors including (1) which court first assumed in rem jurisdiction over the property at issue; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal or state law applies; and (6) whether the state court proceeding would adequately protect the federal plaintiff's rights. Spring City Corp. v. Am. Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999).  No single factor is necessarily determinative. Id.

Declaratory judgment actions, however, are treated differently from actions seeking coercive relief. ITT Indus. Inc. v. Pac. Emp'rs. Ins. Co., 427 F. Supp. 2d 552, 556 (E.D. Pa.

2006).  Declaratory judgments are authorized in the federal courts by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ."  28 U.S.C. § 2201(a) (emphasis added).  The United States Supreme Court has interpreted the permissive language in the statute to give federal courts discretion to decline to hear a declaratory judgment action when there is simultaneous related litigation pending in state court.  See Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.  Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.").

Given the contrast between Colorado River's "exceptional circumstances" language and Brillhart's discretionary authority language, the Supreme Court, in Wilton v. Seven Falls Co., 515 U.S. 277 (1995), created two separate standards for abstention.  "If the federal suit involves coercive claims, such as requests for monetary or other relief, a district court uses the 'exceptional circumstances' standard of Colorado River."  Gen. Nutrition Corp. v. Charter Oak Fire Ins. Co., No. Civ.A.07-262, 2007 WL 2998443, at *1 (W.D. Pa. Nov. 11, 2007).  "If[,] [however,] the federal suit seeks only a declaration of rights, the district court's discretion to dismiss the suit is governed by the standard derived from Wilton."  Id.  In Wilton, the United States Supreme Court held that distinct features of the Declaratory Judgment Act justified an exception from the ordinary rule of Colorado River and granted federal courts "unique and

substantial discretion" to exercise jurisdiction over declaratory actions.  <u>Wilton</u>, 515 U.S. at 286.

In declaratory judgment actions, "the normal principle that federal courts should adjudicate

claims within their jurisdiction yields to considerations of practicality and wise judicial

administration."  <u>Id.</u> at 288.[2]

       Since <u>Wilton</u>, the United States Court of Appeals for the Third Circuit has framed the

crucial question in this analysis as "whether the controversy may 'better be settled' in the state

court. . . ." <u>Atl. Mut. Ins. Co. v. Gula</u>, 84 F. App'x 173, 174 (3d Cir. 2003) (citing <u>United States</u>

<u>v. Pa. Dep't of Envtl. Res.</u>, 923 F.2d 1071, 1075 (3d Cir. 1991)); <u>see also</u> <u>Ironshore Specialty Ins.</u>

<u>Co. v. Haines & Kibblehouse, Inc.</u>, __ F. Supp. 2d __, 2014 WL 981394, at *2 (E.D. Pa. Mar. 13,

2014).  This may "entail consideration of whether the claims of all parties in interest can

satisfactorily be adjudicated in the state court proceeding." <u>Dep't Envtl. Res.</u>, 923 F.2d at 107.

In addition, the Third Circuit has instructed courts to consider the following when deciding

whether to retain jurisdiction: (1) the general policy of restraint when the same issues are pending

in a state court; (2) inherent conflicts of interest between an insurer's duty to defend in a state

court and its attempt to characterize the suit in federal court as falling within the scope of a

policy exclusion;[3] and (3) avoidance of duplicative litigation.  <u>State Auto. Ins. Cos. v. Summy</u>,

234 F.3d 131, 134 (3d Cir. 2000).  Finally, "if the federal court believes that the state law

questions in controversy between the parties are better suited for resolution in state court, then

---

    [2]  Plaintiff concedes and, in fact, vigorously argues that <u>Wilton</u> applies over <u>Colorado</u>
<u>River</u>.  (<u>See</u> Pl.'s Resp. Opp'n Mot. to Dismiss 6 n.2.)  Notably, the <u>Wilton</u> standard favors
abstention significantly more than the <u>Colorado River</u> standard.

    [3]  Although these considerations were developed specifically for cases in the insurance
context, factors one and three are still pertinent to abstention decisions where parallel declaratory
judgment actions are pending in state and federal court.

the federal court may properly abstain from deciding a declaratory judgment claim." Marshall v. Lauriault, 372 F.3d 175, 184 (3d Cir. 2004).

Turning to the case at hand, the Court must initially determine if the federal and state court actions are parallel. As noted above, cases are parallel if they involve the same parties and "substantially identical" issues. Timoney, 66 F. App'x at 405. "The Third Circuit has never required complete identity of the parties for abstention and thus the presence of additional parties in the state action does not destroy the parallel nature of the cases when all of the parties in the federal action are also parties in the state action." Driscoll/Hunt A Joint Venture v. St. Paul Fire & Marine Ins. Co., No. Civ.A.05-6249, 2006 WL 1648984, at *4 (E.D. Pa. June 13, 2006). "Rather, the critical question is not whether the parties are identical but rather whether the factual questions in the two cases overlap and whether procedural vehicles are available to those not parties to the state court action whereby they can obtain resolution of the issues raised in the district court." Id.

The parties in this case agree that the pending state court and federal court actions are parallel.[4] As noted above, the federal action seeks a declaration that (a) Bock committed an "Owner Default" under the terms of the Bond; (b) Bock breached the terms of the Bond by not permitting Berkley to take action under Subparagraph 4.2 of the Bond; (c) Bock's "Owner Default" constitutes a material breach of the Bond; (d) Bock's failure to accept Berkley's tender of performance under 4.2 of the Bond also constitutes a material breach of the Bond; (e) as a result of Bock's material breach of the terms of the Bond, Berkley is released from any and all

---

[4] Notably, Plaintiff explicitly concedes that the claims in this federal action and the bond claims pending in the state court action are "truly duplicative." (Pl.'s Resp. Opp'n Mot. to Dismiss 7.)

obligations to Bock under the Bond; and (f) Berkley's obligations to Bock under the Bond are excused and discharged.  (Am. Compl., at Wherefore Clause.)  Bock's Second Amended Third-Party Complaint in the state court action brings a contrary claim against Berkley for breach of the performance bond and seeks a finding that as a direct result of Berkley's default, Bock has suffered damages.  (Pl.'s Mot. to Dismiss, Ex. X.)  Finally, Berkley's Answer, New Matter and Counterclaim in the state court action—filed on October 9, 2013—presents a request for declaratory judgment *identical to* that filed in this Court.  (Pl.'s Mot. to Dismiss, Ex. Z.)  The mere presence of additional parties and additional related disputes in the state action does not destroy the parallel nature of the cases since all of the parties in the federal actions are also parties in the state action.

Given this determination, the next consideration is whether concerns of practicality and wise judicial administration weigh against the exercise of jurisdiction over the federal action. The Court finds that they do.  First, a pending parallel state court action is one of the factors that favor declining jurisdiction in declaratory judgment actions.  Wilton, 515 U.S. at 288–90; Summy, 234 F.3d at 135.  The Supreme Court has recognized that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  Brillhart, 316 U.S. at 495.  The Third Circuit has similarly remarked that judicial efficiency is not served by allowing actions concerning the same facts and circumstances to proceed in both state and federal court.  Summy, 234 F.3d at 136 ("If the District Court had not interfered, the state court would have been able to develop a coordinated schedule of briefing and discovery that would have promoted the efficient resolution of both the

13

declaratory judgment action and the underlying tort action, thereby conserving judicial resources as well as those of the parties."). In this case, the state court action involves the various disputes among the multiple parties to the construction project at issue, including the bond dispute between Berkley and Bock. Therefore, the state court will be able to resolve all related claims among all of the different parties without engaging in a piecemeal resolution of only one particular claim, as this Court would have to do. In addition, the state court has already indicated its refusal to stay the bond claim portion of the case between Berkley and Bock.[5] Should this Court retain jurisdiction over the federal declaratory judgment action, piecemeal litigation will occur with the likely potential of duplicative and conflicting results with respect to the bond dispute.

Second, there are no federal questions present in this matter. The relief requested in both the federal and state courts requires an application of state contract law with respect to a performance bond. The Third Circuit has cautioned district courts to "give serious consideration to the fact that they do not establish state law, but are limited to predicting it." Summy, 234 F.3d at 135. Accordingly, "[i]n order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to

---

[5] Plaintiff argues that "litigating Berkley's claims in this Court will not constitute piecemeal litigation. Berkley's claims are completely capable of being independently litigated outside of the [state court] Action. In fact, one could lift out the allegations against Berkley in Bock's Third-Amended Complaint and never miss them in that action. Berkley's claims are not crucial to the [state court] Action. They do not override any of the substantive claims in that case. They are derivative to the issues there and can be fully litigated in this Court, without serious concern of impinging upon the state court's efforts in the [state court] Action." (Pl.'s Resp. Opp'n Mot. to Dismiss 11–12.)

Plaintiff's argument misses the point. As the state court has declined to stay the bond claim portion of the case between Berkley and Bock, duplicative litigation will occur should this Court exercise jurisdiction over the federal declaratory judgment action.

resolve unsettled state law matters." Id. at 136.  The Third Circuit noted that the desire of parties

to receive declarations in federal court on purely state law matters "has no special call on the

federal forum." Id.[6]  This principle is especially relevant because the interest of a state "in

resolving its own law must not be given short shrift simply because one party or, indeed, both

parties, perceive some advantage in the federal forum." Id. at 133.  Indeed, "[w]hen the state law

is firmly established, there would seem to be even less reason for the parties to resort to the

federal courts.  Unusual circumstances may occasionally justify such action, but declaratory

judgments in such cases should be rare." Id. at 136.

  Third, as aptly noted by Bock, the state court has been handling disputes related to the

BHS Project since 2009.  All relevant parties—including the City, Bock, Berkley, and G&T—are

joined in that action.  Resolution of the federal declaratory judgment dispute will require

consideration of numerous factual and legal issues that have already been within the state court's

purview for a number of years.  Indeed, it is undisputed that discovery has already been

exchanged within the state court—activity that has not yet occurred in this Court.  As a result,

this Court will have to duplicate the state court's efforts and potentially obtain evidence from

parties not already named in this action.

  Finally, there are no compelling reasons for this Court to exercise jurisdiction.  The Third

Circuit has stated that a district court does not have discretion to decline jurisdiction over a

---

  [6] Although Summy involved an insurance coverage dispute, its dictates have been
extended to other types of disputes, including those involving construction payment bonds.  See
Munich Welding, Inc. v. Great Am. Ins. Co., 415 F. Supp. 2d 571, 576 (W.D. Pa. 2006) (citing
Summy and noting, in the context of a payment bond dispute, that a federal court should decline
to exercise declaratory judgment jurisdiction where there is a parallel state proceeding and only
state law questions are involved).

declaratory judgment action "when the issues include[] federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding." Summy, 234 F.3d at 134 (quoting Dept. of Envtl. Res., 923 F.2d at 1075). None of these considerations are at issue here.  Moreover, it appears that both parties will be able to adequately litigate all pertinent issues and defenses in the state court action.  Wilton, 515 U.S. at 282 (holding that a district court should consider "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.") (quoting Brillhart, 316 U.S. at 495).

  In the face of this overwhelming support for declining the exercise of jurisdiction, Plaintiff's sole response is that it was the first to file.  Specifically, it asserts that the Colorado River doctrine does not apply in light of the "first-to-file" or "first-filed" rule, which Plaintiff argues is the appropriate standard under which Bock's Motion must be considered.  Under this rule, "'[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'"  (Pl.'s Resp. Opp'n Mot. Dismiss 7 (quoting Crossley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)).  Plaintiff goes on to note that the first-filed rule applies not only to concurrently-pending federal cases, but also to co-pending parallel state and federal litigations.  Plaintiff argues that because it was the first to file its claims in this Court in May 2013, and only became a nominal party to the state court action in June 2013 when Bock filed the Third-Party Complaint against Berkley, this Court should retain jurisdiction over the declaratory judgment action.

  Plaintiff's argument, however, is misplaced.  Contrary to Plaintiff's contention, the

first-filed doctrine has long functioned as a "policy of comity" counseling "trial judges to

exercise their discretion by enjoining the subsequent prosecution of 'similar cases . . . in different

federal district courts.'" E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (citations

omitted). "The first-filed doctrine does not apply when similar actions are pending concurrently

in federal and state court, as the rule 'encourages sound judicial administration and promotes

comity among federal courts of equal rank.'" Nihon Tsushin Kabushiki Kaisha v. Davidson, 595

F. Supp. 2d 363, 368 (D. Del. 2009) (quoting Univ. of Pa., 850 F.2d at 971); accord Omnicom

Grp., Inc. v. Emp'rs. Reinsurance Corp., No. Civ.A.01-839, 2002 WL 109346, at *2 (D. Del. Jan.

28, 2002) ("As this rule only applies to related cases filed in different federal courts, it is not

applicable to the present situation where one action is pending in state court").[7]  As the Third

---

[7]  Plaintiff argues that the first-filed rule applies equally to co-pending parallel state and
federal litigations.  In support, it cites a case from the District of New Jersey, Catlin Specialty
Ins. Co. v. Plato Constr. Corp., No. Civ.A.10-5722, 2012 WL 924850, at *4 (D.N.J. Mar. 19,
2012).  The validity of this holding, however, has been called into question by another opinion
from this Court:

> By its terms, the [first-filed] rule applies only to cases filed concurrently in federal
> courts.  Recently, a court in our Circuit applied the first-filed rule where parallel suits
> were pending in state and federal court, see Catlin Specialty Ins. Co. v. Plato Const.
> Corp., No. 10–5722, 2012 WL 924850 (D.N.J. Mar.19, 2012).  However, our Court
> of Appeals has yet to approve this application, and the U.S. Supreme Court
> acknowledged the difference between concurrent state and federal proceedings and
> concurrent proceedings in two federal courts in Colorado River Water Conservation
> District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976), where
> it explained that "[t]he difference in general approach between state-federal
> concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the
> virtually unflagging obligation of the federal courts to exercise the jurisdiction given
> them." Id. at 817.

Tuno v. NWC Warranty Corp., No. Civ.A.12-6955, 2013 WL 3939487, at *16 n.5 (E.D. Pa. July
31, 2013).  Given the Third Circuit's explicit statement that the first-filed rule does not apply in
cases of concurrently pending state proceedings and federal declaratory judgment proceedings,
the Court does not find Catlin Specialty to be persuasive.

Circuit has expressly stated, "[i]t is irrelevant that the state [action] was filed after its counterpart in the District Court." Summy, 234 F.3d at 136; see also Ironshore Specialty Ins. Co. v. Haines & Kibblehouse, Inc., __ F. Supp. 2d __, 2014 WL 981394, at *3 (E.D. Pa. Mar. 13, 2014) (rejecting the plaintiff's argument that the order of filing of the declaratory judgment actions—with the federal action being first and the state court action being filed second—weighed in favor of the federal court retaining jurisdiction); First Mercury Ins. Co. v. Legends, Inc., 914 F. Supp. 2d 644 (E.D. Pa. 2012) (declining to exercise jurisdiction over declaratory action even though state declaratory action was the later filing); Allstate Ins. Co. v. Manilla, No. Civ.A.11-5102, 2012 WL 1392559, at *2 (E.D. Pa. Apr. 20, 2012) ("As in Summy, it is of no import that Ms. Groh filed the state declaratory judgment petition after Plaintiffs filed the present action in this Court."); Gen. Cas. Co. of Wis. v. Guzikowski, No. Civ.A.11-5154, 2011 WL 10654018, at *4 (E.D. Pa. Dec. 9, 2011) ("The Summy Court specifically addressed this issue concluding that the fact that the state declaratory judgment petition was filed after its counterpart in the federal court was irrelevant.").[8]  As such, the mere fact that the federal action at issue was filed prior to the state action has no bearing on the Court's abstention decision.[9]

---

[8]  Plaintiff attempts to distinguish Wilton and Summy on the ground that "[n]one of those cases change or even address the first-filed rule's applicability to co-pending parallel state and federal litigations where the federal litigation was, in fact, first filed without any evidence of doing so 'in anticipation' of the state court filing."  (Pl.'s Resp. Opp'n Mot. Dismiss 10.)  This distinction is irrelevant.  As the Summy and its progeny have made clear, the first-filed rule is of no moment in the case of concurrently pending state actions and federal declaratory judgment actions.  To that end, the Court need not address Plaintiff's argument that Defendant has not produced evidence to preclude the application of the first-filed rule.

[9]  Plaintiff goes on to make a venue argument, contending that this Court constitutes the appropriate venue.  This argument, however, highlights why the first-filed rule applies only in cases of concurrently pending *federal* litigation.  "Since the first-filed suit rule 'will not always yield the most convenient and suitable forum . . . the trial court must [also] weigh the factors

As Wilton reminded us, the Declaratory Judgment Act confers discretion on the courts rather than an absolute right on litigants.  Wilton, 515 U.S. at 287.  Ultimately, "[t]he central question" facing this Court "is whether the controversy may 'better be settled' in state court." Atl. Mut. Ins. Co. v. Gula, 84 F. App'x 173, 174 (3d Cir. 2003) (quoting Pa. Dep't of Envtl. Res., 923 F.2d at 1075).  Applying the foregoing considerations, the Court is persuaded by (1) the fact that the federal action is brought under the Declaratory Judgment Act, which allows for discretion in the exercise of jurisdiction; (2) the fact that the federal action seeks the resolution of a dispute involving purely state law; and (3) the existence of a parallel action in state court, which creates the potential for judicial inefficiency and duplicative proceedings.  There being no countervailing federal interests promoted by this Court's presiding over this case, the Court will exercise its discretion to not assert jurisdiction over this matter and will, in turn, dismiss the case with prejudice.

An appropriate Order follows.

---

used in a transfer analysis as for any other transfer motion.'"  Nexans Inc. v. Belden Inc., 966 F. Supp. 2d 396, 405 (D. Del. 2013) (quoting Micron Tech., Inc. v. Mosaid Techs., Inc. 518 F.3d 897, 904 (Fed. Cir. 2008)).  A transfer motion is used to decide which *federal* forum is most appropriate under 28 U.S.C. § 1404(a), and cannot be used to transfer cases between state and federal courts.  Thus, if the first-filed rule requires a venue analysis under § 1404(a), it follows that the first-filed rule can only apply to concurrent federal actions.